IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMERICAN AUTOMOBILE INSURANCE COMPANY as assignee of FRED AND ADRIENNE KOSTECKI, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| OMEGA FLEX, INC., a Pennsylvania Corporation, | ) ) ) |
| Defendant. | ) |

Case No.: 4:11 cv 00305AGF

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR NEW TRIAL**

NOW COMES the Plaintiff, American Automobile Insurance Company, by and through its attorneys, and in support of its Motion for New Trial, submits the following Memorandum of Law:

**INTRODUCTION**

A new trial of this matter is warranted based upon the exclusion of certain testimony to be offered by Plaintiff's metallurgical expert, Dr. Thomas Eagar, and the admission of certain testimony of Defendant's expert, Dr. Harri Kytomaa. As more fully explained below, the exclusion of testimony by Dr. Eagar concerning Defendant's improper design of its TracPipe product and the inclusion of Dr. Kytomaa's opinion testimony at trial concerning lightning and metallurgy—opinions that Dr. Kytomaa was not qualified to make—adversely and substantially impacted Plaintiff's substantial rights, which ultimately resulted in a jury verdict in favor of Defendant and a miscarriage of justice.

On April 30, 2010, a fire destroyed the home of Plaintiff's insureds, Fred and Adrienne Kostecki. Plaintiff, American Automobile Insurance Company ("AAIC"), insured the Kosteckis' home. Plaintiff's investigation of the fire determined that the failure of a gas line that

was designed and manufactured by the Defendant, Omega Flex, Inc., under the brand name TracPipe caused the fire.  TracPipe is comprised of corrugated stainless steel tubing ("CSST"), which is marketed by the Defendant as a replacement for thicker black iron pipe as a means of conveying natural or propane gas through homes.  TracPipe is very thin, measuring only ten mils—as thin as four sheets of paper.  Unlike black iron pipe, CSST can fail catastrophically if the home becomes energized by a lightning strike.  This is because the product is so thin that it melts when it becomes energized by a lightning strike as the energy from the lightning strike seeks a path to ground.  As it seeks this path to ground, the energy from the lightning strike will jump off the CSST, usually through the air to another nearby conductive material, in what is known as an arcing event.  The temperature generated by this lightning-induced arcing event is measured in thousands of degrees, which is easily hot enough to melt the thin skin of the CSST, even though the arcs lasts only a fraction of a second.  When this occurs, the gas is allowed to escape and is ignited simultaneously by the melting event, causing a gas-fueled fire.

    Dr. Thomas Eagar is the former Chairman of the Department of Material Sciences and Engineering at the Massachusetts Institute of Technology ("MIT").  He is a metallurgist and a recognized manufacturing engineer.  AAIC disclosed Dr. Thomas Eagar as its expert concerning, among other things, the characteristics of CSST, the susceptibility of CSST to failure when subject to energy from direct and indirect lightning strikes, that the subject fire was caused by a lightning-induced CSST failure and that from a metallurgical point of view, that the use of such a thin metal makes CSST unreasonably dangerous.  In its pretrial memorandum and order of June 11, 2013, the Court limited Dr. Eagar from offering opinion testimony related to product design. (Memorandum and Order 14, ECF No. 96; *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, No. 4:11-cv-00305, 2013 U.S. Dist. LEXIS 81745, at *19 (June 11, 2013)).  Dr. Eagar, however, is uniquely qualified to have offered the opinion that the use of the particular metal in TracPipe was the

result of Omega Flex's negligence in designing the product and that its incorporation into TracPipe was a design defect.

Omega Flex disclosed Harri Kytomaa, who is a certified fire investigator and has a Ph.D. in mechanical engineering, as its expert on liability issues. Among other things, Dr. Kytomaa was expected to testify at trial that the CSST in the area of the subject fire's origin was attacked by fire, that the gas escaping from an electrical arc-induced hole in CSST can neither ignite nor sustain ignition and that proper bonding can prevent lightning-induced CSST fires. At trial, Dr. Kytomaa offered opinion testimony over objection by Plaintiff's counsel. Specifically, Dr. Kytomaa was allowed to opine from the witness stand that the energy from the lightning strike struck the tree and then dissipated in such a fashion that it was not capable of perforating through the CSST. He also offered metallurgical opinions and was allowed to criticize Dr. Eagar's metallurgical opinions even though he has no such metallurgical expertise. Dr. Kytomaa was not to give these opinions at trial.

At trial, AAIC proceeded with two causes of action against Omega Flex for the damages arising from the fire. AAIC alleged that Omega Flex was negligent in designing TracPipe because it failed to account for lightning when it designed its product and selected a metal material susceptible to failure when it is charged with lightning-induced energy. AAIC also alleged that Omega Flex is strictly liable for the damages caused by its unsafe CSST product under Missouri Revised Statute §537.760, Missouri's products liability statute. The jury ultimately returned a verdict in favor of Omega Flex on both counts. The jury, however, based on the Court's ruling of June 11, 2013, was not allowed to hear testimony from Dr. Eagar on the design of TracPipe and specifically Dr. Eagar's opinions as to the metallurgical facets of the TracPipe design. In contrast, Defendant was allowed, over objection by Plaintiff's counsel, to elicit opinion testimony at trial from Dr. Kytomaa pertaining to lightning behavior and

3

metallurgy—areas far outside the scope of Dr. Kytomaa's expertise.  The exclusion of Dr. Eagar's testimony and the inclusion of Dr. Kytomaa's testimony, whether viewed independently or cumulatively, manifestly affected Plaintiff's substantial rights to present all proper evidence to the jury in support of AAIC's claims against Omega Flex.  Accordingly, AAIC is entitled to a new trial pursuant to Fed. R. Civ. P. 59.

I.  **THE OPINION TESTIMONY UNDERLYING PLAINTIFF'S REQUEST FOR A NEW TRIAL**

   A.  **Dr. Thomas Eagar's Background, Qualifications and Precluded Opinions**

Dr. Eagar is the former Chairman of the Department of Material Sciences and Engineering at the Massachusetts Institute of Technology ("MIT"). (Ex. A, Curriculum Vitae of Dr. Thomas Eagar 1–2)  Dr. Eagar earned his Bachelor's Degree from MIT in the field of Metallurgy, along with a Doctorate in Sciences, also awarded from MIT.  (Ex. A, Eagar CV 1) As a professor at MIT over the past 30 years, Dr. Eagar has taught courses on both the undergraduate and graduate levels in mechanical engineering, materials selection, product design and manufacturing ethics.  He has also taught undergraduate and graduate level courses in chemical, electrical and physical metallurgy, arc physics, welding, as well as courses on materials processing, chemistry, and a myriad of other topics related to failure analysis of particular materials. (Ex. A, Eagar CV 1–2, 4).  Dr. Eagar is one of the foremost experts in the world regarding the interrelationship between metals and the forces that act upon metals.  As such, he has worked with Learjet regarding appropriate bonding of Learjet's electrical systems for their jets.  (Ex. C, Dep. of Dr. Thomas Eagar, *Cincinnati Insurance Company as subrogee of Richard Sauer and Leila Davis v. Omega Flex, Inc.*, 49:1–17)  He has also testified before the United States Congress and the United States Department of Energy on issues relating to

metallurgy and fields of material science, and he has consulted on metallurgical and bonding issues for the United States Navy related to high current applications. (Ex. A, Eagar CV 3–4).

Dr. Eagar has authored and published over 200 articles that have appeared in scientific journals (many of which bear a direct relevance on the issues in this case) and he currently holds 15 patents in the field of material science, with several other patents pending approval. (Ex. A, Eagar CV 4–22). One of the books written by Dr. Eagar, the ASM Handbook, is now in its tenth publication cycle. The ASM Handbook has been in publication since 1948 and is a metallurgists' version of Prosser on Torts. The book's most recent edition includes material authored by Dr. Eagar regarding methods of analyzing arcing events on metal surfaces. Lastly, Dr. Eagar has been qualified by and has provided testimony in numerous state and federal courts, including in the Pennsylvania Court of Common Pleas in *Tincher v. Omega Flex, Inc.*, where a jury found Omega Flex's TracPipe CSST product to be defective and unreasonably dangerous following an eight day trial in October of 2010. (Ex. B, Testimony List of Dr. Thomas Eagar 8; Ex. D, Verdict Sheet, *Terence D. Tincher and Judith R. Tincher v. Omega Flex, Inc.*).

Relevant to this motion, Dr. Eagar was disclosed as holding the opinion that the CSST material that Omega Flex selected for its TracPipe product was too thin to resist failure when energized with lightning energy. However, prior to the trial of this matter, the Court limited Dr. Eagar from testifying at trial that Defendant's material selection use for its CSST product was (1) ill-suited for the application and (2) the result of an improper design process undertaken by Omega Flex.

**B.     Harri Kytomaa's Background, Qualifications and Improperly Admitted Opinions**

Dr. Kytomaa is a mechanical engineer by training and a certified fire investigator. At trial, the jury was permitted to entertain the following opinion testimony of Dr. Kytomaa:

5

    (1)    The energy from a lightning strike could not penetrate through the CSST because the energy would dissipate in such a way that there would be limited energy available once the CSST became energized; and

    (2)    Dr. Eagar's metallurgical opinions were unsound.

Dr. Kytomaa admitted at trial and during his depositions before trial that he was neither an expert in lightning or metallurgy. Over Plaintiff's objections at trial, the jury was permitted to hear this testimony despite Dr. Kytomaa's admissions that he had no specialized knowledge with respect to metallurgy and lightning energy. Dr. Kytomaa should have been barred from testifying to these opinions at trial.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 59(a), "The court, may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The improper exclusion or admission of expert opinion testimony is a recognized basis for granting a new trial. *Moran v. Ford Motor Co.*, 476 F.2d 289, 291 (8th Cir. 1973) (district court's "failure to permit [plaintiff's expert's] testimony resulted in prejudicial damage to plaintiff's attempt to prove causation"); see also *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 185–86 (8th Cir. 1972) ("When evidence is erroneously admitted or excluded or where the trial court has erred in the instructions to the jury, the trial court is considered in a better position to correct a manifest injustice in ruling on the motion for new trial. Under these circumstances the grant of the new trial does not interfere with the role of the jury as the trier of fact."). "A new trial is appropriate when . . . legal errors at trial[] resulted in a miscarriage of justice." *Beal v. LaFarge N. Am., Inc.*, No. 4:07-CV-296, 2009 U.S. Dist. LEXIS 63706, at *2 (E.D. Mo. July 24, 2009) (citing *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)). In evaluating a motion for a new trial, "a district judge must carefully weigh and balance the evidence and articulate reasons" in

6

determining whether a "miscarriage of justice has occurred" and that a new trial is then appropriate. *King v. Davis*, 980 F.2d 1236, 1237 (8th Cir. 1992).

### III.   ARGUMENT

The preclusion of Dr. Eagar's testimony regarding the defective design of TracPipe and the inclusion of Dr. Kytomaa's testimony concerning lightning and metallurgy independently resulted in a substantial impact to AAIC's rights to present all proper evidence to the jury, an adverse jury verdict and a miscarriage of justice.  Thus, Plaintiff is entitled to a new trial pursuant to Fed. R. Civ. P. 59.

#### A.   The Exclusion of Dr. Eagar's Testimony on the Design Defect Issue was Prejudicial Error

Although the Court recognized Dr. Eagar's expertise in metallurgy and arc physics,[1] it erred when it barred Dr. Eagar from offering his opinions at trial concerning the defective design of TracPipe.  The excluded opinion testimony falls within the subject matter of Dr. Eagar's experience in manufacturing engineering, product design and manufacturing ethics and simultaneously falls under the subject matter of his specialized skills in metallurgy and manufacturing engineering.  According to the law of this Circuit, Dr. Eagar should have been permitted to testify that Omega Flex's material selection for TracPipe constituted a flaw in the design process and that the design of TracPipe CSST was defective due to the failure characteristics of the metal used in TracPipe.

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir.2001). Fed. R. Evid. 702 provides:

---

[1] Memorandum and Order 11, ECF No. 96.

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.  F.R.E. 702; *see also Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997).

"Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony."  *Weisgram v. Marley Co.,* 169 F.3d 514, 523 (8th Cir. 1999), *aff'd,* 528 U.S. 440 (2000).  The Rule "favors admissibility if the testimony will assist the trier of fact."  *Clark ex rel. Clark v. Heidrick,* 150 F.3d 912, 915 (8th Cir. 1998).  Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Id.*

The trial court is charged with the duty to ensure that testimony admitted under Rule 702 "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993).  The Court's inquiry is a flexible one and must be "tied to the facts of the particular case." *Kuhmo Tire Co. v. Carmichael,* 526 U.S. 137, 150 (1999).  As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. *Larson v. Kempker,* 414 F.3d 936, 941 (8th Cir. 2005) (quoting *Hose v. Chicago Northwestern Transp. Co.,* 70 F.3d 968, 974 (8th Cir. 1995)). Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded. *First Union Nat'l. Bank v. Benham,* 423 F.3d 855, 862 (8th Cir.2005) (citing *Bonner v. ISP Techs., Inc.,* 259 F.3d 924, 929–30 (8th Cir.2001)).

Specifically, the Court barred Dr. Eagar from testifying at trial that Omega Flex was negligent in designing the TracPipe product and that Omega Flex's use of the particular CSST material constituted a design defect.  Dr. Eagar opined that the thin walls of CSST are vulnerable to lightning induced failure through either resistive heating or arcing.  (Ex. E, Supplemental

8

Report of Dr. Thomas Eagar)  In order to reach this conclusion, Dr. Eagar used data regarding typical lightning strikes from published sources and applied an equation known as the thermal time constant formula to show that the thin metal wall can fail due to resistive heating or arcing. (Ex. E, Supp. Report)  Dr. Eager noted that CSST is much more likely to sustain damage from arcing than black iron pipe. (Ex. E, Supp. Report)  As a result, Dr. Eagar opined that CSST is many more times likely to fail due to arcing when compared to black iron pipe, the traditional means of conveying gas in residential structures. (Ex. E, Supp. Report)  Moreover, studies dating back as far as the early 1940s cited by both Dr. Eagar and Omega Flex's experts confirm that the most important factor in whether a particular metal is susceptible to damage by lightning is the thinness of the metal.[2]

In ruling that Dr. Eagar could not testify regarding the design of Defendant's TracPipe in this matter, the Court explained:

> the Court concludes that Plaintiff has not shown by a preponderance of the evidence that Eagar can qualify as an expert with respect to product design and product warnings to provide a reliable basis for his opinions on these issues. Eagar has specifically disavowed such expertise and his areas of expertise bear no more than a remote relationship to product design and warnings.  In the absence of specific expertise on these issues, his testimony will provide little assistance to the jury. (Memorandum and Order 13, ECF Doc. No. 96)

The order precluding Dr. Eagar from testifying concerning the defective design of TracPipe was thus based on the Court's perception that Dr. Eagar was not qualified to state such an opinion.  In this regard, the Court paid particular attention to Dr. Eagar's testimony in the *Sauer*[3] matter where he admitted that he has never designed a CSST system.  However, as explained by Plaintiff during oral argument during the hearing on the Defendant's motion, this

---

[2] See K.B. McEachron and J.H. Hagentguth, "Effect of Lightning on Thin Metal Surfaces," AIEE Transactions, Volume 61, 1942, attached hereto as Exhibit X.  See also, J.H. Hagenguth, "Lightning Stroke Damage to Aircraft," AIEE Transactions, Volume 68, 1949.
[3] *Cincinnati Ins. Co. v. Omega Flex, Inc.*, No. 3:10-CV-00670 (W.D. Ky.)

LEGAL\17024648\1 00024.0002.000/271376.000

statement by Dr. Eagar, placed out of context by Omega Flex, only means that Dr. Eagar has not installed a CSST system in a home. When installing a CSST system in a home, the plumber must determine how the long the runs must be and how the gas lines must be run. It has nothing to do with his qualifications for issue in this case. The issue in this case is material selection, and there is no one that has Dr. Eagar's qualifications in this regard.

"The broad and generally stated test for determining the qualifications of a given witness to testify as an expert is whether his knowledge of the subject matter is such that his opinion will most likely assist the trier of fact in arriving at the truth." *Holmgren v. Massey-Ferguson, Inc.*, 516 F.2d 856, 857–58 (8th Cir. 1975). In considering an expert's qualifications to render an opinion, the Eight Circuit has stated:

> Acceptance of an expert's qualifications cannot depend on his precise skill or background in a particular profession or industry. If the subject matter (safe design) falls within a person's experience in or overall knowledge of a specialized skill (engineering), this is sufficient to qualify the witness as an expert. We deem it too strict a standard that one must have manufactured or previously designed machinery to understand principles of safe design." *Id.* at 858.

Under this standard, Dr. Eagar is uniquely qualified to testify that from a metallurgical standpoint, the selection of the material used in TracPipe constituted a design flaw. Dr. Eagar is eminently qualified to render these opinions as they are well within his scope of experience as a metallurgist, scientist and teacher and his academic and professional experiences display his abilities to understand principles of safe design. The subject matter of his opinion is the susceptibility of the CSST material to fail when exposed to lightning energy. His opinion is predominately metallurgical in nature, which falls within his experience in the metallurgical field and in is experience and overall knowledge of the specialized field of metallurgy and design. Moreover, Dr. Eagar's opinions are supported by his professional experience as a recognized manufacturing engineer and professor of materials selection, product design and manufacturing ethics.

10

LEGAL\17024648\1 00024.0002.000/271376.000

Dr. Eagar's testimony concerning the inappropriate material selection and consideration appears to have been barred by a strict adherence to "labeling" as opposed to the determination of whether the subject matter of his opinions fell within his experience or overall knowledge in a specialized skill. Accordingly, the Court may have been troubled Dr. Eagar's deposition testimony in a prior case that he does not hold himself out as an expert in the design of corrugated stainless steel systems. (Memorandum and Order 12 & nn. 3, 4, ECF Doc. No. 96) However, his experience in both metallurgy and manufacturing is not "remote" to the issue of whether he understood principles of safe design—the focus of the inquiry. Rather, his experience is inseverably intertwined with the principles of safe design: the failure of Omega Flex to consider the effects of lightning in its metallic product and the selection of a metallic material that is susceptible to catastrophic failure when charged with energy from lightning strikes.

Finally, the simplicity of the product does not require Dr. Eagar to be a self-professed expert in the specific field of "corrugated stainless steel tubing systems design." Dr. Eagar has an array of design-related credentials: he is recognized as a manufacturing engineer, has developed several patented design applications in his career and has taught related design classes to a generation of engineers. (Ex. A, Eagar CV 1–4). Moreover, these credentials display his ability to understand principles of safe design when it comes to products that are predominantly metal, like TracPipe.

Dr. Eagar's lack of "design expertise" is a fallacy and ignores the fact that the product at issue is simply not that complicated. While Omega Flex likes to characterize its product as innovative, CSST is nothing more than a thin piece of stainless steel that is round, hollow and corrugated. (Ex. F, Dep. of Robert Torbin, 111:11–113:2). Indeed, the Court recognized that "TracPipe is a relatively straightforward product with simple design components—CSST pipe

11

and plastic sheathing. It has no moving parts and no complex mechanisms or mechanical interactions." (Memorandum Regarding Def.'s Mot. in Limine No. 4, at 4, ECF Doc. No. 157; *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, No. 4:11-CV-00305, 2013 U.S. Dist. LEXIS 90160, at *5 (June 28, 2013)).

Dr. Eagar has determined, from a metallurgical point of view, that the use of such a thin metal makes CSST, a simple, two-component product, unreasonably dangerous. (Ex. E, Supp. Report) Dr. Eagar is clearly qualified to render an opinion regarding whether the use of a particular metal in this application is appropriate. See *Cincinnati Ins. Co. v. Omega Flex, Inc.*, No. 10-CV-00670, Mem. Opinion & Order, ECF Doc. No. 91 (W.D. Ky. Apr. 5, 2013) (Dr. Eagar was allowed to "testify as to causation and defective design, to the extent such opinions are metallurgical in nature."). The Court thus erred in ruling that Dr. Eagar was unqualified to testify that TracPipe was defectively designed from a metallurgical standpoint and a new trial is warranted.

**B.     The Court Erred in Allowing Dr. Harri Kytomaa to Give Opinion Testimony on the Amount of Lightning Energy on the CSST in the Kostecki Home and with Respect to the Metallurgical Characteristics of TracPipe**

At trial and over Plaintiff's objections, the jury was permitted to entertain the following opinion testimony of Dr. Kytomaa:

(1)     The energy from a lightning strike could not penetrate through the CSST because the energy would dissipate in such a way that there would be limited energy available once the CSST became energized; and

(2)     Dr. Eagar's metallurgical opinions were unsound.

Plaintiff's substantive rights guaranteeing that the jury hear only properly-vetted expert opinion testimony were adversely impacted in allowing Dr. Kytomaa's testimony on these subjects. Dr. Kytomaa admitted at trial and during his depositions before trial that he was neither an expert in lightning or metallurgy. Dr. Kytomaa testified in his deposition:

12

> Q. Do you hold yourself out as an expert in metallurgy?
>
> **A. No. I'm not a metallurgist.**
>
> Q. Do you hold yourself out as an expert in lightning?
>
> **A. No.**  (Ex. G, Dep. of Harri Kytomaa 32:4–9, Oct. 11, 2012)

The opinions at issue rely on specialized knowledge of lightning phenomena and metallurgy and Dr. Kytomaa was admittedly unqualified to give them at trial, yet he was still allowed to testify about them over Plaintiff's objections. The subject matter of these opinions fell neither within Dr. Kytomaa's areas of experience nor within his areas of specialized knowledge, mechanical engineering. See *Holmgren*, 516 F.2d at 858. Accordingly, Dr. Kytomaa should have been barred from testifying to these opinions at trial.

Under *Daubert*, a Court is charged with acting as a gate-keeper to ensure that the proffered testimony is both relevant and reliable. *Daubert*, 509 U.S. at 592. Proffered expert testimony should be excluded if it is speculative or conjectural. *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 981 (8th Cir. 2010); *Junk v. Terminix Int'l Co., Ltd. P'ship.*, 628 F.3d 439, 448 (8th Cir. 2010) ("Speculative testimony should not be admitted."). Similarly, expert opinions that are without a factual basis and are based on speculation or conjecture are similarly inappropriate for consideration. *Id.*

Dr. Kytomaa was unqualified to opine at trial that the CSST was the victim of fire attack, that gas escaping from an arc-induced hole in the CSST cannot be ignited and that bonding would have prevented this fire. Dr. Kytomaa's opinions are either speculative, without an evidentiary basis, or contradict recognized scientific principles. Even more troubling is the fact there was no clear scientific methodology used by Dr. Kytomaa so that all his testimony his fatally flawed. As a result, AAIC was prejudiced when the jury heard the above opinion

testimony of Dr. Kytomaa as they added no value, likely confused the jury and were ultimately not worthy of the jury's attention.

## IV.   CONCLUSION

The Court erred in barring Dr. Eagar from testifying at trial that the use of CSST as used in Omega Flex's TracPipe product was a defective design.  Contrary to the Court's conclusion, Dr. Eagar was highly qualified to render his opinion regarding the defective design of TracPipe with respect to metallurgical issues.  Moreover, the Court's conclusion on this issue is confused by the Court's permitting Dr. Kytomaa to render opinions with respect to both metallurgical and lightning-induced energy issues.  Dr. Kytomaa was unqualified to render these opinions yet allowed to present them at trial over Plaintiff's objects prior to and at trial.  As a result of the Court's evidentiary rulings on the expert opinion testimony, Plaintiff was prevented from presenting all proper evidence in support of its claims to the jury and was prejudiced by the exposure of the jury to Dr. Kytomaa's improperly admitted opinion testimony concerning the fire cause and the efficacy of bonding.

WHEREFORE, Plaintiff, American Automobile Insurance Company, respectfully requests that this Court enter an order granting Plaintiff's Motion for a New Trial.

                Respectfully submitted,

           By: s/ Anthony J. Morrone
              Attorneys for the Plaintiff

Steve Hoyne
Stephen A. Hoyne at Law
10805 Sunset Office Drive, Suite 300
St. Louis, MO 63127

Anthony J. Morrone
COZEN O'CONNOR
333 W. Wacker Drive, Suite 1900
Chicago, Illinois 60606
Phone No: (312) 382-3100
Fax: (312)382-8910
Email: amorrone@cozen.com

Mark E. Utke
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Phone No: (215) 665-2164
Fax: (215) 701-2164
Email: mutke@cozen.com

## **CERTIFICATE OF SERVICE**

  The undersigned attorney hereby certifies that on this 7th day of August, 2013, the forgoing document was presented to the Clerk of Court for filing and uploading to the CM/ECF system, which will send notification of such filing to the all counsel of record.

                s/Anthony J. Morrone
                Anthony J. Morrone